```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

ROBERT BERNSTEIN, as trustee       :
of the Fletcher Johnson
Insurance Trust, et al.,           :    09 Civ. 4925 (CM)(HBP)

                 Plaintiffs,       :    MEMORANDUM OPINION
                                        AND ORDER
     -against-                     :

PRINCIPAL LIFE INSURANCE COMPANY,  :

                 Defendant.        :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I write to resolve several discovery issues raised by defendant. The issues are addressed in correspondence from defendant's counsel dated August 17, September 2 and October 29, 2010 and correspondence from plaintiffs' counsel dated August 24 and November 1, 2010.

I. Background

This is an action to collect on a life insurance policy issued on the life of the late Dr. Fletcher Johnson in the amount of $5 million that was issued in 2007 when Johnson was 76 years old. Shortly after the policy was issued, the policy was transferred to the plaintiff trust. Johnson died approximately 16 months after the policy was issued.

Defendant has refused to pay the proceeds of the policy, claiming that the purchase of the policy and its transfer to the plaintiff trust were the product of a "STOLI" scheme, i.e. a stranger originated life insurance scheme in which a life insurance policy is procured for the purpose of selling the policy to investors who, although they have no insurable interest in the life of the insured, will fund the premiums and receive the benefits when the insured dies.  In such transactions, all costs are usually borne by the investors who are, in essence, betting that the insured will die before the total cost of the premiums paid exceeds the proceeds of the policy.  See generally Life Prod. Clearing LLC v. Angel, 530 F. Supp. 2d 646, 652-55 (S.D.N.Y. 2008) (Chin, D.J., now Cir. J.).

In its counterclaim, defendant seeks a declaratory judgment that the policy is void or voidable and alleges that third-party investors and/or STOLI promoters approached Johnson and solicited his participation in plan to procure a life insurance policy to sell to third-party investors in the secondary market (Amended Counterclaims, dated December 15, 2009 (Docket Item 20) ("Am. Countercl."), ¶ 16).  According to defendant, the plan called for the creation of a trust that would own the policy and be the beneficiary; premiums would be paid by third parties (Am. Countercl. ¶ 17).

Pursuant to the alleged plan, Dr. Johnson applied to defendant for a life insurance policy in the amount of $5 million on April 26, 2007; the application disclosed that the policy would be owned by a trust (Am. Countecl. ¶¶ 18-19).  Notwithstanding the foregoing disclosure, defendant alleges that application for the policy was accompanied by a "Policy Owner Intent form" in which the following questions were, according to defendant, falsely answered in the negative:

> • Is there any intention that any group of investors will obtain any right, title or interest in any policy issued on the life of the Proposed Insured(s) as a result of the policy applied for?
>
> • Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them?

(Am. Countercl. ¶ 21).  According to defendant, both questions were falsely answered 'no' by the trustee of the trust and by Steve Lockwood, the insurance agent who procured the policy in issue (Am. Countercl. ¶ 22).  Defendant also claims that Johnson misrepresented the status of his health in the application (Am. Countercl. ¶¶ 23-24).

As a result of the foregoing and other allegations, defendant seeks a declaratory the policy is void because the policy was issued to a party or parties with no insurable interest in Johnson, that the plan to do so was fraudulently concealed

3

(Am. Countercl. ¶¶ 40-45), and that the policy is void because the trust and its agents made fraudulent misrepresentations to defendant (Am. Countercl. ¶¶ 47-50).

II. The Pending
    Discovery Disputes

    1. <u>Discovery from Lockwood Regarding other Policies</u> - Defendant first seeks to compel non-party Lockwood to produce documents concerning other 12 other putative STOLI policies in which Lockwood participated. Defendant claims that documents concerning these other policies are relevant to show Lockwood's intent to defraud pursuant to Fed.R.Evid. 404(b).

    At the time of defendant's application for this discovery, it appeared to be the law in New York that "[o]nly one who obtains a life insurance policy on himself 'on his own initiative' and in good faith -- that is, with a genuine intent to obtain insurance protection for a family member, loved one, or business partner, rather than an intent to disguise what would otherwise be a gambling transaction by a stranger on his life -- may freely assign the policy to one who does not have an insurable interest in him." <u>Life Prod. Clearing, LLC v. Angel</u>, <u>supra</u>, 530 F. Supp. 2d at 653. The New York Court of Appeals has recently rejected that view and held that "New York law permits a

4

person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose."  Kramer v. Phoenix Life Ins. Co., No. 176, 2010 WL 4628103 at 1 (N.Y. Ct. of Apps. Nov. 17, 2010).  Thus, even if I construe defendant's counterclaims to allege a scheme or conspiracy among Johnson, Lockwood and others to conceal the purpose for which the policy was procured, i.e., a STOLI transaction, and that Lockwood's intent is attributable to Johnson, such a scheme would not affect the validity of the policy.[1]

      Accordingly, the documents concerning other policies are immaterial, and defendant's application to compel their production is denied.

      2.  Directions Not to Answer at Lockwood's Deposition - Defendant also raises an issue concerning Lockwood's refusal to answer questions at his deposition concerning whether he believed his conduct complied with the law and whether certain trust provisions were binding on the beneficiary of the trust.  Lock-

---

[1] If I do not construe the counterclaim to allege some type of concerted conduct in which Lockwood and Johnson participated, Lockwood's intent would be entirely irrelevant.  Phoenix Life Ins. Co. v. Irwin Levinson Ins. Trust II, 70 A.D.3d 476, 477, 895 N.Y.S.2d 366, 367 (1st Dep't 2010)

wood refused to answer these questions on the ground that they called for a legal conclusion.

Although defendant is correct that deposition witnesses ordinarily cannot refuse to answer a question on the ground that the question calls for a legal conclusion, see generally 2 Michael C. Silberberg, Edward M. Spiro & Judith L. Mogul, <u>Civil Practice in the Southern District of New York</u> § 18:8 (2d ed. 2009), no point would be served in reconvening Lockwood's deposition to permit these questions to be asked because the questions are irrelevant. Lockwood's subjective belief as to the legality or legal consequences of his conduct has no impact on the outcome of this case.

3. <u>Lockwood's Assertion of the Attorney Client Privilege Concerning Communications with Skadden</u> - Defendant's third discovery issue arises out of Lockwood's refusal to answer questions concerning communications with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"). Lockwood refused to answer these questions on the ground of privilege, claiming that he was communicating with Skadden as an agent XLI Holdings, LLC which was a client of Skadden. Defendant claims that the communications involved a transaction in which "Lockwood and Skadden were on opposing sides" and that Lockwood's communications could not, therefore, be privileged.

The record currently before me is ambiguous as to the nature of the communications between Lockwood and Skadden. No later than December 13, 2010, Lockwood is either (1) to advise defendant that he consents to the continuation of his deposition concerning communications with Skadden or (2) to submit an affidavit or declaration describing the general nature of his communications with Skadden and explaining how the elements of the attorney client privilege are established.

4.  Plaintiffs' Responses to Defendant's Requests for Admissions - Defendant's final contention is that plaintiffs have failed to respond adequately to certain requests for admissions.

Defendant first contends that plaintiffs have failed to either admit or deny requests 14, 17, 32, 33, 55, 56, 57, 66, 78 and 79 and that these requests should, therefore, be deemed admitted. Plaintiffs correctly point out that requests 14, 17, 32, 33, 55, 56, 57, 66, 78 and 79 relate to either the conduct of third parties or the knowledge or motivation of third parties. A party's obligation to respond to a request for an admission does not usually encompass an obligation to interview non-parties or otherwise seek information from non-parties.

> Although, under certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit, see, e.g., In re Gulf Oil/Cities Serv. Tender Offer Litig., Nos. 82 Civ. 5253, 87 Civ. 8982 (MBM), 1990 WL 657537, at *3-4

>    (S.D.N.Y. May 2, 1990) (court finds that plaintiff must consult non-parties' counsel to confirm data derived from figures in documents produced by non-party, where plaintiff and non-party have parallel interests and have been closely cooperating in conducting discovery in two related cases); Al-Jundi, 91 F.R.D. at 594-95 (where, without extraordinary expense or effort, defendant may be able to respond based upon information secured from co-defendants and their counsel, such efforts must be made), such a requirement is far from absolute. Rather, as set forth in Rule 36, the responding party need only make "reasonable" efforts to secure information that is "readily obtainable." See, e.g., Al-Jundi, 91 F.R.D. at 593-94. Generally, a "reasonable inquiry" is limited to review and inquiry of those persons and documents that are within the responding party's control.
>
>>    Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well.
>
>    Herrera v. Scully, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) (quoting Diederich v. Department of Army, 132 F.R.D. 614, 619 (S.D.N.Y. 1990)); Diederich, 132 F.R.D. at 620 ("The requirement of 'reasonable inquiry' does not generally extend to third parties, absent sworn deposition testimony of such third party.").

T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 43-44 (S.D.N.Y. 1997).

Accordingly, plaintiffs' failure to admit or deny these requests is appropriate.

Defendant next contends that plaintiffs' responses to requests 1-5, 21, 22, 24, 28, 63, 70-72, 74, 75, 83-86, 92-94 and

8

100-03 are inadequate because plaintiffs have objected to these requests as seeking an admission that is not within the knowledge of the plaintiffs but have failed to detail the efforts taken by plaintiffs to obtain the information necessary to admit or deny the request.  See Fed.R.Civ.P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. . . . The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.").

With respect to each of the requests in this second category, plaintiffs' responses include the following "Plaintiffs object to this Request to the extent that it calls for an admission of fact that is not within the knowledge of the plaintiffs. Notwithstanding the foregoing, plaintiffs deny [this Request]."[2] Thus, plaintiffs have not failed to respond to each of the requests in this group on the ground that they lack knowledge. Rather, they have denied each of the requests in this group

---

[2] Some responses also object on the grounds of relevance and to defendant's use of certain terms as vague and ambiguous.

notwithstanding their claimed lack of knowledge.[3] Although defendant may disagree with these responses, that disagreement does not render the responses inadequate.

Accordingly, defendant's application for relief with respect to its requests for admissions is denied.

Dated: New York, New York
December 2, 2010

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Tab K. Rosenfeld, Esq.
Rosenfeld & Kaplan, L.L.P.
10th Floor
535 Fifth Avenue
New York, New York  10017

Andrew J. Lorin, Esq.
Drinker Biddle & Reath LLP
39th Floor
140 Broadway
New York, New York  10007

---

[3]Admittedly, there is an internal inconsistency with a party's stating that it has no knowledge concerning the truth of a proposition and simultaneously denying it. Nevertheless, defendant does not assert this inconsistency as a deficiency in plaintiffs' responses, and plaintiffs, therefore, have had no occasion to address it. Accordingly, I decline to address it on my own initiative.